# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO.  09-02048 |
| | Chapter   7 |
| PMC MARKETING CORP | |
| | Adversary No. 12-00125 |
| **Debtor(s)** | |
| NOREEN WISCOVITCH RENTAS CHAPTER 7 TRUSTEE | |
| **Plaintiff** | |
| vs. | |
| VAQUERIAS TRES MONJITAS, INC | |
| | **FILED & ENTERED ON 12/20/2013** |
| **Defendants** | |

## OPINION AND ORDER

Before this Court is Plaintiff's Motion for Summary Judgment and accompanying Statement of Facts [Dkt. No. 35, 36], Defendant's Opposition [Dkt. No. 44], and Plaintiff's Reply to Defendant's Opposition [Dkt. No.'s 48, 49]. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED.

## I.    Background

Debtor, PMC Marketing Corporation, filed a voluntary chapter 11 bankruptcy petition on March 18, 2009. On May 21, 2010, Debtor's bankruptcy case was converted to a chapter 7.  On March 2, 2012, Debtor's Chapter 7 Trustee and Plaintiff, herein Noreen Wiscovitch Rentas, filed an

adversary proceeding to recover funds to the estate from the Defendant in the amount of $40,766.85. Plaintiff's Motion for Summary Judgment and Defendant's Reply followed.

**II. Summary Judgment Standard**

The role of summary judgment is to look behind the facade of the pleadings and assay the parties' proof in order to determine whether a trial is required. Under Federal Rules of Civil Procedure, Rule 56(c), made applicable in bankruptcy by Federal Rules of Bankruptcy Procedure, Rule 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir.2001). A fact is deemed "material" if it potentially could affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the nonmoving party. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004). Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate,

"through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Moreover, "[o]n issues where the nonmovant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991).These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). But, the evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id. See also Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir.1993) (the materials attached to the motion for summary judgment must be admissible and usable at trial.) "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

In the summary judgment motion presently before the court, Plaintiff argues that there are no genuine issues as to any material facts and that therefore the moving party is entitled to judgment as a matter of law. Plaintiff argues that Debtor's transfer of $40,766.85 is a preferential transfer under 11 U.S.C. § 547 because such payment was cashed between December 29, 2008 and March 13, 2009. In this case, all the requirements are met because the payment was made to a creditor, on account of an antecedent debt, during the preference period, while Debtor was insolvent, and such payments permitted the creditor to receive more than it would have if the case was under a Chapter 7 bankruptcy proceeding.

In its Reply, Defendant argues that the payment may not be avoided by the Plaintiff pursuant to Sections 547(c)(1) and (c)(2). Defendant did not provide any evidence to invoke the Section

547(c)(1) contemporaneous exchange for new value defense. As to Section 547(c)(2), Defendant provides a table that shows all the payments made from January 8, 2008 to March 12, 2009, which includes the last five checks in dispute, and then argues that it "has shown the pattern of invoicing and payment for more than a year, and the pattern is the same within the 90 days prior to the filing of the petition…."

In the Plaintiff's Response to the above, she contends that as to the new value defense, Defendant has failed to establish two out of the three requirements under Section 547(c)(1). The three requirements, Plaintiff argues, are as follows: "(1) that the parties intended for the transfer to be a contemporaneous exchange for new value, (2) that the exchange was in fact contemporaneous, and (3) that the new value was in fact given." As to the ordinary course of business defense, Defendant did not provide this Court with copies of the invoices to determine whether such payments were made in accordance with the terms of the invoice. Therefore, such defense is waived and without merit. Even if such defense is not waived, the table Defendant provided did not establish a set pattern of payments or transactions that could be considered as ordinary course of business.

**A. Summary Judgment Analysis**

After reviewing the Plaintiff's arguments, and the relevant law, this Court concludes that there are no genuine issues as to material facts and that the moving party is entitled to judgment as a matter of law. In a motion for summary judgment, in order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense *or* demonstrate that the nonmoving party does not have sufficient evidence of an essential element to carry its ultimate burden of persuasion at trial. Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1516-17 (1st Cir. 1991); High Tech Gays v. Defense Indus. Sec.

Clearance Office, 895 F.2d 563, 574 (9th Cir.1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id.

Therefore, if a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce any evidence, even to the extent that the nonmoving party would have the ultimate burden of persuasion at trial. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); High Tech Gays, 895 F.2d at 574. With such scenario above, the nonmoving party can then defeat a summary judgment motion without producing any evidence. See High Tech Gays, 895 F.2d at 574; Clark v. Coats & Clark, Inc., 929 F.2d 604, 607 (11th Cir.1991). On the contrary, if a moving party carries out its burden of production, the nonmoving party must produce evidence to support its claim or defense. See High Tech Gays, 895 F.2d at 574; Cline v. Industrial Maintenance Eng'g. & Contracting Co., 200 F.3d 1223, 1229 (9th Cir.2000). Therefore, if the nonmoving party fails to produce sufficient evidence to create a genuine issue of material fact, the moving party prevails in the motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") Alternatively, if the nonmoving party produces sufficient evidence to establish a genuine issue of material fact, the nonmoving party defeats the motion. See id.

Therefore, the primary inquiry this Court must decide first is whether the Plaintiff, as the moving party carried its initial burden of production and accordingly whether the Defendant, as the

nonmoving party, had an obligation to produce evidence in response. The Supreme Court provided for such analytical framework in Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court, under Adickes and Celotex, offered guidance that a moving party without the ultimate burden of persuasion at trial may regardless carry its initial burden of production by either of two methods: the moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. In practice, the first method mentioned above or the Adickes method, may be more commonly employed because the moving party may find it easier to produce affirmative evidence negating an essential element of the nonmoving party's claim or defense than it is to show that the nonmoving party has insufficient evidence to carry its ultimate burden of persuasion at trial. The second or the Celotex method is equally favored legally, where in appropriate cases, a moving party can carry its initial burden of production by demonstrating that the nonmoving party does not have enough evidence to carry its ultimate burden of persuasion at trial.

**B. Preferential Transfers**

In this instant case, the court takes judicial notice that the Debtor's bankruptcy filing date is March 18, 2009 as per the date stated on the Case Docket. The question this Court must then answer is whether Debtor's payments in the amount of $40,766.85 cashed between December 29, 2008 and March 13, 2009, constitute avoidable transfers. In order for payments to be recoverable as

preferential transfers, payments must satisfy all of the requirements of 11 U.S.C. § 547(b). The Trustee bears the burden of proving the transfers were: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfers were made; (3) made while the debtor was insolvent; (4) on or within ninety (90) days before the date of filing of the petition; and (5) that enabled the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor had not received the transfer. 11 U.S.C. § 547 (b). The court is satisfied as per the evidence provided by Plaintiff that Debtor's payments to Defendant meet the criteria of Section 547(b), and therefore are a preference as defined by the Code.

### i.    New Value Exception

Although Section 547(b) of the Bankruptcy Code authorizes a trustee to avoid preferences, Section 547(c) equips the transferee with certain defenses. These defenses "are designed to rescue from attack in bankruptcy those kinds of transactions, otherwise fitting the definition of a preference, that are essential to commercial reality and do not offend the purposes of preference law, or that benefit the ongoing business by helping to keep the potential bankrupt afloat." Epstein, Nickles & White, Bankruptcy, Practitioner Treatise Series, Vol. 1, § 6–3, at 587 (1992). Pursuant to Section 547(c), the trustee may not avoid a transfer under Section 547(b) that (1) was "intended by the debtor and the creditor ... to be a contemporaneous exchange for new value given to the debtor" and "in fact" was a "substantially contemporaneous exchange" ("contemporaneous exchange defense"), 11 U.S.C. § 547(c)(1); (2) was "in payment of a debt incurred by the debtor in the ordinary course of business" ("ordinary course of business defense"), 11 U.S.C. § 547(c)(2); or (3) was followed in time by "new value" given by the creditor "to or for the value of the debtor" ("subsequent new value

defense"), 11 U.S.C. § 547(c)(4).

In order to prevail on a contemporaneous exchange defense, the Defendant must demonstrate (1) that the parties intended the transfer to be a contemporaneous exchange, (2) that the transfer was in fact contemporaneous AND (3) that exchange was in fact contemporaneous. In re Shelton Harrison Chevrolet, Inc., 202 F3d. 834 (6th Cir. 2000); In re Barefoot, 952 F2d 795 (4thCir.1991); See also, Cimmaron Oil Co. v Cameron Consultants, Inc., 71 BR 1005 (ND Tex., 1987) (Under 11 USCS § 547(c)(1), a creditor who received payment during preference period must show: (1) creditor extended new value to debtor; (2) both parties intended exchange to be contemporaneous; and (3) exchange was actually contemporaneous.). It is important to note that the Defendant must prove all three elements. Specifically a defendant must provide proof that the parties intended the transfer to be a contemporaneous exchange for new value. In re Wadsworth Bldg. Components, Inc., 711 F2d 122 (9th Cir., 1983). As to the "contemporaneous exchange for new value" defense, the Defendant appears to argue Sections 547(c)(1)(A) and 547(c)(1(B) as if they were separate defenses, when in fact they are tied together. Moreover, the table in Exhibit 1 of Defendant's Reply shows that the Debtor didn't pay the invoices immediately upon receipt of the merchandise. In fact, it shows the opposite - Debtor paid for invoices which were over 122 days old during the preference period.

The Defendant fails to allege, much less provide evidence of all of the requirements under Section 547(c)(1). At most, the Defendant has alleged that new value was provided (the third requirement). The Defendant has not provided this Court proof of what the new value was or in what amount. The Defendant is silent as to the other two requirements - it has failed to convince the court that the parties intended for the exchange to be contemporaneous, and that the transfers were in fact contemporaneous. In this instant case, Defendant fails to successfully invoke the defense of new

value exception.

### ii.      Ordinary Course of Business Exception

Section 547(c)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that:

(c) The trustee may not avoid under this section a transfer

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the ~~transferee~~ **and** such transfer was;
(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; **or**
(B) made according to ordinary business terms. (emphasis added)

11 U.S.C. § 547(c)(2); 11 U.S.C. § 547(g); In re Healthco Int'l, Inc., 132 F.3d 104, 109 (1st Cir. 1997); Advo-System, Inc. v. Maxway Corp., 37 F.3d 1044, 1047 (4th Cir.1994); Sulmeyer v. Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 732 (9th Cir.1994); Jones v. United Sav. & Loan Ass'n. (In re U.S.A. Inns of Eureka Springs, Ark., Inc.), 9 F.3d 680, 682 (8th Cir.1993). This statutory change demonstrates that creditors no longer had to meet all three prongs under § 547(c)(2) but merely the first and second prongs[1] *or* the first and third prongs.

The ordinary course of business exception thrives from the core of bankruptcy preference law. As such, this exception shields payments received by creditors provided that the steps taken are consistent with the customary practice among specific industry participants. Congressional records are consistent with this interpretation. An examination of the pertinent Records reveal that the purpose of this exception was to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the

---

1 For the purpose of the analysis, Section 547(c)(2) is the "first prong"; Section 547(c)(2)(A) is the "second prong;" and Section 547(c)(2)(B) is the "third prong."

debtor or [its] creditors during the debtor's slide into bankruptcy." H.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 6329. Sections 547(c)(2) and 547(c)(2)(A) in relevant part, state that:

> "The trustee may not avoid under this section a transfer to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business *or* financial affairs of the debtor and the transferee and such transfer was—(A) made in the ordinary course of business or financial affairs of the debtor and the transferee."
> (emphasis ours)

Under the first two prongs, Sections 547(c)(2) and 547(c)(2)(A), the Defendant simply needs to demonstrate by a preponderance of the evidence that the specific transaction was ordinary as between the parties. Daly v. Radulesco (In re Carrozzella & Richardson), 247 B.R. 595, 603 (B.A.P.2d Cir.2000); see also In re Enron Creditors Recovery Corp., 376 B.R. at 459 (stating that the subjective test focuses solely on the prior dealings of debtor and creditor). So while a late payment is usually non-ordinary, a defendant can rebut this presumption if late payments were the standard course of dealing between the parties. See Id. (quoting 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 504.04[2][ii], at 547–55 (16th ed. 2010) ("COLLIER")). In determining whether a transfer satisfies the requirements of Section 547(c)(2)(A), courts examine several factors including "(i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment." Buchwald Capital Advisors LLC v. Metl–Span I., Ltd. (In re Pameco Corp.), 356 B.R. 327, 340 (Bankr.S.D.N.Y.2006); Official Comm. of Unsecured Creditors of 360 networks (USA) Inc. v. U.S. Relocation Servs. (In re 360 networks (USA) Inc.), 338 B.R. 194, 210 (Bankr.S.D.N.Y.2005); see also Hassett v. Goetzmann (In re CIS Corp.), 195 B.R. 251, 258 (Bankr.S.D.N.Y.1996).

To a certain extent, Defendant must establish a "baseline of dealings" between the parties to "enable the court to compare the payment practices during the preference period with the prior course of dealing." In re Fabrikant & Sons, Inc., 2010 WL 4622449, at *3; Cassirer v. Herskowitz (In re Schick), 234 B.R. 337, 348 (Bankr.S.D.N.Y.1999). Defendant therefore must "demonstrate some consistency with other business transactions between the debtor and the creditor." Id. at *3. Summarily, this Court would have to engage in a comparison of the average number of days between the invoice and payment dates during the pre-preference and preference periods. In re Quebecor World (USA), Inc., 08-10152 SHL, 2013 WL 1741946 (Bankr.S.D.N.Y. Apr. 23, 2013); Also see In re Fabrikant & Sons, Inc., 2010 WL 4622449, at *4. Defendant, in this instant case, did not supplement any evidence within the factors as stated above including those that may demonstrate any sort of patterns, except the fact that these payments were indeed paid to and deposited by the Defendant. Although the Defendant has not established with adequate evidence to prevail under Section 547(c)(2)(A), this subsection also calls for an examination of Section 547(c)(2)(B).

Unlike, Sections 547(c)(2) and 547(c)(2)(A), in which the interpretation relies on the proof of the parties' own dealings, Section 547(c)(2)(B) has an objective element which requires reference to external datum. A survey of circuit case law reveals that the majority of the Circuit Courts of Appeal, with the exception of the Eleventh Circuit Court of Appeals,[2] concluded that the "ordinary business terms" meaning is to be held broadly to customary terms and conditions used by other individuals in the same industry witnessing exact or similar problems. In re Roblin Industries, Inc., 78 F.3d 30, 39 (2nd Cir. 1996) (collecting cases). Such conduct between the debtor and the creditor should be held

---

2 See Marathon Oil Co. v. Flatau (In re Craig Oil Co.), 785 F.2d 1563, 1566-67 (11th Cir.1986) (The Eleventh Circuit adopted the conduct of the parties standard instead of the objective inquiry adopted by the other Circuits.

objectively in light of the industry practices. Therefore, "only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection [B]." In re Tolona Pizza Products Corp., 3 F.3d 1029, 1033 (7th Cir.1993). This interpretation is in line with the Congressional legislative history as it reveals:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during [its] slide into bankruptcy. The protection thus afforded the debtor often enables [it] to work [its] way out of a difficult financial situation through cooperation with all of [its] creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of [its] class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-that of equality of distribution.

H.Rep. No. 595, 95th Cong., 1st Sess. 177-78 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6138. This Court agrees that the objective standard contained in 11 U.S.C. § 547(c)(2)(B) mandates a creditor to establish that a payment for which it seeks the protection of under the "ordinary course of business exception" to fall within the ordinary practice of others similarly situated within the same industry.

Having established this objective standard under Section 547(c)(2)(B), "ordinary business terms" must include those terms employed by similarly situated debtors and creditors facing the same or similar situations. Therefore, if the terms in question are ordinary for industry participants under financial distress, then they are ordinary for the industry. This objective standard serves a protective function to which a creditor that agrees to restructure a debt in a manner consistent with industry practice in those circumstances would not lose the benefit of such exception. Such objective standard

---

The conduct of the parties standard observes the conduct of the parties themselves to determine if the terms of a preferential transfer are ordinary).

also serves a dual policy function: (1) an industry creditor acting in a specific manner would not be viewed as performing an unusual practice when such creditor does no more than follow usual industry practice, precisely the kind of behavior the ordinary course of business exception was intended to protect, and (2) it lessens the restrictions a creditor would experience in courses of action typical in untroubled times in order to allow room for realistic debt workouts without unfairly penalizing those creditors who take conventional steps to institute a repayment plan. See In re U.S.A. Inns of Eureka Springs, Arkansas Inc., 9 F.3d 680 at 682-86. The table provided by Defendant demonstrates that there is no "set pattern of payments or transactions" which can be considered as ordinary course of business. See Dkt. No. 44, Exhibit 1. Debtor made 31 payments in the 15 months prior to the filing of the petition. In some months, the Debtor made up to four payments (January of 2008), and in others no payments at all (April of 2008). The payments ranged from $4,337.53 up to $36,470.84 prior to the preference period, but during the preference period the payments only ranged between $5,001.35 to $11,755.79. 37. As can be seen from the table, the payments prior to the preference period were late, between 48 and 123 days. During the preference period, the payments were between 122 and 148 days late. This shows that during the preference period, the Debtor was paying much later than prior to the preference period. The average "lateness" of the payments prior to the preference period was 85.7 days and the median was 91 days. On the other hand, the average "lateness" of the payments during the preference period was 134 days and the median was 135 days. During the preference period the payments were made for much older invoices (average of 135 days late) at an average of $8,463, but prior to the preference period the payments were considerably closer to the invoice being paid (average of 85.7 days late) and for more money on average $13,743. There was no set payment pattern which can be interpreted as constituting an "ordinary course of

business" defense. In this instant case, Defendant fails to present sufficient evidence to invoke Section 547(c)(2)(B), and thus cannot qualify for the "ordinary course of business" exception.

**III.     Conclusion**

Summarily, Plaintiff successfully carried out the burden as mandated by <u>Adickes</u> and <u>Celotex</u>. Not only did Plaintiff produce evidence negating an essential element of the nonmoving party's case, but she also established that the Defendant does not have sufficient evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial. Moreover, Defendant fails to present sufficient evidence to demonstrate that there is a genuine issue of fact in dispute for a trial.

WHEREFORE, IT IS ORDERED that Plaintiff's Motion for Summary Judgment shall be, and it hereby is, GRANTED. Clerk to enter judgment.

SO ORDERED

San Juan, Puerto Rico, this 20th day of December, 2013.

Brian K. Tester
U.S. Bankruptcy Judge